*In re* T.B. *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellee, v. Angela Roy, Respondent-Appellant).

Fourth District   No. 4—90—0658

Opinion filed June 20, 1991.

Lynne R. Feldman, of Kirtley-Pavia-Marsh, P.C., of Urbana, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle and Robert J. Biderman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Harvey Welch, of Urbana, guardian *ad litem.*

JUSTICE SPITZ delivered the opinion of the court:

This is an appeal by the respondent Angela Roy from an order of the circuit court of Champaign County placing guardianship and custody of T.B., R.B., and A.R. in the Illinois Department of Children and Family Services (DCFS) and awarding the custody of C.B. to her father. The trial court found the children to be neglected minors by reason of their being physically abused by respondent and her current husband, Raymond Roy, the father of A.R. The date of birth of each child is as follows: T.B. was born September 9, 1983; C.B. was born October 30, 1984; R.B. was born May 20, 1987; and A.R. was born May 27, 1989.

On appeal, respondent raises three issues. The issues to be considered are: (1) whether the petition to have the children determined to be neglected minors fails to allege with specific particularity the grounds upon which the petition is based; (2) whether the findings of the trial court were against the manifest weight of the evidence; and (3) whether the dispositional orders of the trial court resulted from an abuse of discretion.

The first issue to be considered is the specificity of the petition. The petition contained two counts. Count I alleged the children were neglected by reason of their environment being injurious to their wel-

fare. Count II alleged the children were abused because respondent created a substantial risk of physical injury to the minors by other than accidental means and her acts would be likely to cause impairment either to the minors' emotional health or their bodily functions, or both.

In determining the sufficiency of the pleading, the test is whether the petition reasonably informs the respondent of a valid claim made under a general class of cases of which the circuit court has jurisdiction. (*In re G.W.S.* (1990), 196 Ill. App. 3d 107, 553 N.E.2d 85.) The statutory requirements of adjudicating a minor neglected or abused do not require an allegation of parental unfitness. (Ill. Rev. Stat. 1989, ch. 37, pars. 802—3, 802—21, 802—23, 802—27.) If necessary, that issue may be raised in a supplemental petition for termination of parental rights. *In re Smith* (1981), 95 Ill. App. 3d 373, 420 N.E.2d 200.

In the case at bar, the allegations of abuse and neglect conform to the statutory grounds. (Ill. Rev. Stat. 1989, ch. 37, pars. 802—3(1)(b), (2)(i).) As a result, the petition properly stated the causes of action for abuse and neglect.

Respondent argues that since the petition failed to allege she was an unfit mother, the trial court's finding of unfitness in the dispositional order was inappropriate. (*In re B.K.* (1984), 121 Ill. App. 3d 662, 460 N.E.2d 43.) Respondent points out that the failure to allege unfitness induced her to present no witnesses on her behalf. She also admitted the allegations in the petition at the adjudicatory hearing.

The State responds that because the consequences of the proceedings are different, the term "unfit" in the section relating to removing custody and guardianship from a parent following a finding of neglect differs in meaning from the unfitness required to be found for termination of parental rights for purposes of appointing a guardian with consent to adopt. We agree, and furthermore, where the State does not seek to have parental rights terminated, upon a finding of unfitness the trial court's discretion in entering a dispositional order is limited in the alternatives available because of the differences in the burden of proof and the failure to notify the respondent that termination of parental rights would be sought. Furthermore, the trial court found that respondent was unfit *and* unable for other than financial reasons to care for, protect, train and discipline the minors. Finally, the petition's prayer for relief did ask the trial court to make findings as to fitness, willingness and ability of the parents to care for, protect, train, or discipline the minors. Therefore, respondent

should have been aware that her unfitness would be an issue in this matter, and she has failed to demonstrate how she is prejudiced.

The remaining issues to consider are whether the trial court's finding that respondent is unfit and unable for other than financial reasons to care for, protect, train, and discipline the minors, and those findings relating to the best interests of the children and the community, are against the manifest weight of the evidence and whether the dispositional order is an abuse of discretion. Having admitted the allegations of neglect, respondent does not contest the findings of neglect.

■■ On review, the trial court's determination will be reversed only if the findings of fact are against the manifest weight of the evidence or if the trial court committed an abuse of discretion by selecting an inappropriate dispositional order. (*In re Jackson* (1980), 81 Ill. App. 3d 136, 400 N.E.2d 1087; *In re Nitz* (1979), 76 Ill. App. 3d 15, 394 N.E.2d 887; see also *In re Napier* (1980), 83 Ill. App. 3d 503, 404 N.E.2d 423 (which points out that the exercise of discretion relates to the choice of disposition).) A finding of the trial court is against the manifest weight of the evidence if a review of the record clearly demonstrates that the result opposite to the one reached by the trial court was the proper result. (*Stone v. City of Arcola* (1989), 181 Ill. App. 3d 513, 536 N.E.2d 1329.) This standard of review recognizes that the trial court is in a much better position than is this court to observe the witnesses, assess credibility, and weigh the evidence. For this reason, a reviewing court will not overturn the trial court's findings merely because the reviewing court might have reached a different decision. *In re Application of the County Treasurer* (1989), 131 Ill. 2d 541, 546 N.E.2d 506.

■■■ With regard to the trial court's discretion in entering a dispositional order, the trial court may place the minor in the custody of a person not a parent of the minor, as provided in section 2—27 of the Act, if the court finds the following: (1) the parents are unfit or unable for reasons other than financial circumstances alone or are unwilling to care for, train, protect, or discipline the minor; *and* (2) services aimed at family preservation and reinforcement have been unsuccessful in rectifying the conditions leading to findings of unfitness or inability; *and* (3) the best interests of the minor require custody be placed with someone other than the parents. (Ill. Rev. Stat. 1989, ch. 37, par. 802—27.) A parent's right to custody of the child does not prevail where the court has determined such custody would be contrary to the best interests of the child. (Ill. Rev. Stat. 1989, ch. 37, par. 801—2(3)(c).) Where an injurious environment has been found

to exist, the trial court need not wait until the child becomes a victim or is emotionally damaged permanently in order to remove the child from the household. *In re A.D.R.* (1989), 186 Ill. App. 3d 386, 542 N.E.2d 487.

■ The respondent's argument, while referring to manifest weight in the statement of the issue, instead focuses on the impropriety of the custody awards in the dispositional orders. As a result, this court will also focus on the question of abuse of discretion by the trial court.

The underlying facts are these. A report of neglect involving respondent and T.B. was received by DCFS on December 18, 1983. This was an "indicated report." On November 10, 1986, DCFS began investigating a second indicated report that C.B. was diagnosed as having chlamydia, as well as cuts, bruises, and welts. The investigation focused on the substantial risk of physical injury to C.B. and exposure to sexually transmitted diseases by an unknown perpetrator. A third indicated report was received on July 12, 1988, regarding inadequate supervision and a substantial risk of physical injury where respondent admitted leaving R.B. asleep in his crib and alone while respondent walked to the grocery store with the other two children. The crib was observed to have window blind cords and tape hanging in it. The fourth indicated report was received on December 27, 1989. R.B. was found to have three bruises on his face and numerous bruises on his buttocks. Respondent's current husband admitted losing control and hitting R.B. across the face with his hand and a wooden paddle, spanking him on the buttocks, and shoving him. R.B. also had a large abrasion on his chin from being pushed on a rug by respondent's husband. Respondent was given the choice of seeking a protective order and having her husband leave the home or having the children placed in protective custody. Respondent was reported to be "very resistant," but she did pursue the protective order and had her husband leave the home. Respondent later stated she caused some of the bruises observed on R.B. On April 27, 1990, the most recent report was received and involved cuts, bruises, and welts on R.B., a bruise on C.B.'s forehead (which the child said was caused by her mother hitting her with the hand), faint bruises on C.B.'s buttocks caused by respondent's husband, and T.B. denying he had bruises but stating that if he does something wrong respondent has her husband spank him.

The trial judge was "extremely troubled" by the fact there were five indicated reports involving this family. He also noted that respondent's husband's spanking of the children was inconsistent with an agreement made by DCFS which allowed the children to remain in

the house. Of additional concern was the fact the order of protection was violated by respondent's husband baby-sitting the children.

The respondent asks this court to review the report of DCFS employees and outside counselors to determine that the findings of unfitness and inability are against the manifest weight of the evidence or that the dispositional order is a result of an abuse of discretion. This has been done.

While the caseworkers from the Central Baptist Family Services Family First Program did find in respondent and her husband a strong desire for family reunification, they also found their communication with the children was not very interactive and generally took the form of directives or advice. The recommendations that were made included continued parent education and counseling, individual attention from service providers for the children, and continued family participation in the Family First Program. Similarly, the report from Family Service of Champaign County recommends continued counseling for respondent and her husband and a strong recommendation to review the frequency and length of visits due to the levels of cooperation and the remorse displayed by respondent and her husband. The report of the Parent Education Group of the Children's Home and Aid Society of Illinois merely states that "success" is expected if respondent and her husband continue to work on and improve their parenting techniques and they achieve work schedules which allow both parents to be home with the children as frequently as possible and to allow them each to get sufficient sleep. The report from the Mental Health Center of Champaign County recommended continued participation in a pretherapy group for respondent's husband, although future physically abusive behavior toward the children was not considered a high risk because of the adverse consequences of being removed from the family and the fact he has now been provided alternative methods of discipline. The foster family caseworker for Webster-Cantrell Hall in Decatur, Illinois, supervised visitation and her report discusses the interaction of the children with respondent and her husband. The DCFS child-welfare specialist, James Forrest, made the following recommendations: (1) DCFS be made guardian of the minors; (2) unsupervised, extended, overnight visitation be authorized; and (3) the order of protection be vacated. However, not one of these reports recommends that custody be returned to respondent.

Respondent also points to the fact that C.B.'s father indicated he would support returning C.B. to Illinois to enable her to be with her half-siblings and to enhance the opportunity for family reunification. C.B. currently resides with her father in Nevada. The trial court re-

jected this suggestion. The trial judge stated his alternatives at this time for C.B. were placement in a foster home or placement with her father, and as far as the trial judge was concerned, placement with her father was the preferable choice.

On the facts of this case, the findings of fact are not against the manifest weight of the evidence and the dispositional order is not an abuse of discretion. Accordingly, the order of the circuit court of Champaign County is affirmed.

Affirmed.

LUND, P.J., and KNECHT, J., concur.